# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Amy L.,<br><br>Plaintiff,<br><br>v.<br><br>Andrew Saul, Commissioner of Social Security,<br><br>Defendant. | Case No. 18-cv-2173 (HB)<br><br>**ORDER** |

HILDY BOWBEER, United States Magistrate Judge

Pursuant to 42 U.S.C. § 405(g), Plaintiff Amy L. seeks judicial review of a final decision by the Acting Commissioner of Social Security denying her application for disability insurance benefits. She specifically challenges (1) the ALJ's finding that her head injury was not a severe impairment (2) the ALJ's consideration of her work history in his assessment of her subjective complaints. The case is before the Court on the parties' cross-motions for summary judgment. For the reasons set forth below, the Court denies Plaintiff's motion and grants the Commissioner's motion.

## I. Procedural History

Plaintiff filed an application for disability insurance benefits ("DIB") on March 12, 2015, alleging an onset of disability date of March 1, 2008. (*See* R. 148 [Doc. No. 10].) The application was denied initially and on reconsideration. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was convened on June 15,

2017. (R. 26). Plaintiff amended her onset of disability date to May 16, 2010, at the hearing. (R. 10.)

The ALJ issued an unfavorable decision on August 9, 2017. (R. 7–20.) Following the five-step sequential evaluation outlined in 20 C.F.R. § 404.1520(a)(4), the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since May 16, 2010, through her date last insured of December 31, 2014. (R. 12.) At step two, the ALJ determined that Plaintiff had severe impairments of: "history of right total hip arthroplasty, with dislocation in November 2013; and degenerative disc disease in the cervical and lumbar spine." (R. 12.)[1] The ALJ acknowledged evidence of other physical and mental impairments, including Plaintiff's head injury and claimed residual effects, and engaged in a lengthy discussion of those impairments as part of his step two analysis. (R. 13–16.)

Proceeding to the third step of the sequential evaluation, the ALJ found that none of Plaintiff's impairments, considered alone or in combination, met or equaled the severity of an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1. (R. 16.) The ALJ evaluated Plaintiff's right hip impairment under Listings 1.02 and 1.03 and Plaintiff's cervical and lumbar spine impairments under Listing 1.04. (R. 17.)

The ALJ next determined that Plaintiff had the residual functional capacity

---

[1] A "severe impairment" must meet the continuous twelve-month durational requirement, *see* 20 C.F.R. § 404.1509, and "significantly limit[]" an individual's ability to perform basic work activities, 20 C.F.R. § 404.1520(a)(4)(ii), (c).

2

("RFC")² to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with additional restrictions on climbing, balancing, stooping, kneeling, crouching, crawling, reaching, and exposure to heights. (R. 17.) With this RFC, the ALJ found that Plaintiff could perform her past relevant work as a credit analyst. (R. 19.) Consequently, the ALJ deemed Plaintiff not disabled. (R. 20.)

The Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner. (R. 1.) Plaintiff then commenced this action for judicial review. The Court has reviewed the entire administrative record, giving particular attention to the facts and records cited by the parties. The Court will recount the facts of record only to the extent they are helpful for context or necessary for resolution of the specific issues presented in the parties' motions.

## II. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision. 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from

---

² An RFC assessment measures the most a person can do, despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ must base the RFC "on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).

the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)).  The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or the Court would have decided the case differently.  *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)).  In other words, if it is possible to reach two inconsistent positions from the evidence, and one of those positions is that of the Commissioner, the Court must affirm the decision.  *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden to prove disability.  *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995).  To meet the definition of disability for DIB, the claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The disability, not just the impairment, must have lasted or be expected to last for at least twelve months.  *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

III.  Discussion

    A.  **Whether the ALJ Properly Evaluated Plaintiff's Head Injury at Step Two**

Plaintiff argues the ALJ erred by not deeming her head injury and residual effects a severe impairment at the second step of the sequential evaluation.  The relevant timeframe is May 16, 2010 (the onset of disability date), through December 31, 2014 (the date last insured).

### 1. Relevant Legal Standards

At step two, the claimant must show she has an impairment that significantly limits her ability to work in most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (quoting 20 C.F.R. §§ 404.1520(c), 404.1521(b)). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). That is, the impairment must have "more than a minimal effect on the claimant's ability to work." *Id.* A claimant's "age, education, and work experience" are not relevant to the step two inquiry. *See* 20 C.F.R. § 404.1520(c). Rather, "medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities." SSR 85-28, 1985 WL 56856, at *4. The severity showing "is not an onerous requirement for the claimant to meet, . . . but it is also not a toothless standard." *Kirby*, 500 F.3d at 708 (citations omitted).

### 2. The ALJ's Findings

In assessing Plaintiff's head injury and related limitations at step two, the ALJ considered and summarized the following evidence.

Plaintiff suffered a left frontal parenchymal hemorrhage, left subdural hematoma, and right occipital and orbital fractures after she fell during a syncopal episode on May 16, 2010. (R. 13.) She was hospitalized for six days, during which she was monitored and her fractures conservatively managed. (R. 13.) Plaintiff experienced mild limitations in mobility, conditioning, walking, daily activities, and cognitive functioning while she was hospitalized. (R. 13.) One month after the head injury, Plaintiff reported

occasional—but resolving—headaches, dizziness, and double vision at a neurosurgical follow-up appointment. (R. 13.) Her motor strength was fully intact. (R. 13.) On August 2, 2010, she reported continued improvement and was discharged from further neurological follow-up. (R. 13.) Plaintiff saw Dr. Dana Barr for medication refills in August 2010 and reported head pain. (R. 13.) Other than high blood pressure, no other physical or mental complaints were noted. (R. 13.) Her medications at that time were Lopressor, Zoloft, and Flexeril. (R. 13.)

Plaintiff returned to Dr. Barr a year later, in September 2011, for medication refills. (R. 14.) She said she had no sense of taste or smell since the head injury, but she reported no other ongoing conditions. (R. 14.) She did not report debilitating headaches and said she took Ansaid and Excedrin for acute headaches. (R. 14.) Dr. Barr refilled her prescriptions for Ansaid and Lopressor for migraine headaches. (R. 14.) Dr. Barr also prescribed Vicodin for cervical degenerative disc disease, but did not preform a neck examination. (R. 14.) Zoloft was not mentioned. (R. 14.)

Plaintiff saw Dr. Barr next in September 2012 for medication refills. (R. 14.) Dr. Barr did not examine her neck but prescribed Neurontin for pain control. (R. 14.) Plaintiff did not report any debilitating headaches, and Dr. Barr refilled the Lopressor prescription for migraines. (R. 14.) In May 2013, Plaintiff requested narcotic pain medication for bedtime use. (R. 14.) Dr. Barr prescribed Percocet but did not examine Plaintiff. (R. 14.) Dr. Barr also refilled the Neurontin and Lopressor prescriptions. (R. 14.)

In November 2013, Plaintiff complained of anxiety and panic attacks since her

6

head injury. (R. 14.) She also reported personality changes such as preferring different television shows and different political views. (R. 14.) Dr. Barr prescribed Celexa for anxiety and referred Plaintiff for a neuropsychology consultation, but Dr. Barr did not diagnose Plaintiff with anxiety or record any signs or symptoms of anxiety. (R. 14.) In December 2014, Plaintiff reported low back and lower extremity pain. (R. 14.) She was prescribed Neurontin, Ansaid, and Percocet. (R. 14.) There was no mention of anxiety or depression. (R. 14.)

At a physical therapy appointment in January 2015, Plaintiff's medications were recorded as Lopressor, Neurontin, Excedrin, Ansaid, Percocet, and Flexeril. (R. 14.) Plaintiff denied headaches at a neurological consultation in January 2015. (R. 14.) In March 2015, Plaintiff reported panic symptoms as a result of discontinuing Neurontin and starting Cymbalta. (R. 14.) The provider described Plaintiff's depression as stable and did not list anxiety as an active diagnosis. (R. 14.)

At a head injury evaluation with Dr. Brionn Tonkin in March 2015, Plaintiff reported markedly increased anxiety, depression, and irritability; two to four headaches per week; lightheadedness; photophobia; phonophobia; changes in hearing and a buzzing sound; coordination problems; difficulty concentrating; and distractibility. (R. 14.) Plaintiff said she stopped taking Cymbalta, Neurontin, and Ansaid, but continued to take Flexeril, Lopressor, and Celexa. (R. 14.) During the mental status examination, Plaintiff could recall only two out of three objects after five minutes, and was not able to recite serial digits backward through a five-digit span, but results were otherwise unremarkable. (R. 14–15.) Plaintiff demonstrated appropriate thought content, judgment, affect, and

insight. (R. 15.) She had some imbalance in a tandem stance and reported some dizziness, but she could easily stand from a seated position and walk normally in-balance. (R. 15.) Plaintiff was assessed with a suspected mild traumatic brain injury, with marked abnormalities in physical and emotional areas, and mild cognitive limitations. The ALJ observed that the above assessment, however, was not supported by any medical evidence from the period August 2010 through December 2014. (R. 15.) Nor did the referral provider's examination findings support his assessment of marked physical and mild cognitive limitations. (R. 15.)

At a psychological evaluation with Dr. Jane Roskowski in April 2015, Plaintiff for the first time reported memory problems, which she attributed to her head injury. (R. 15.) The ALJ noted that Plaintiff also reported moderately severe depression and mild anxiety, which was inconsistent with no reports of depressive symptoms and only one complaint of anxiety between August 2010 and the end of December 2014. (R. 15.) Despite Plaintiff's report of anxiety, the referral psychologist did not observe symptoms of anxiety, and described Plaintiff as alert, oriented, cooperative, engaged, and pleasant, with normal thought content and processes, speech, eye contact, insight, judgment, memory, and psychomotor activity. (R. 15.)

The ALJ contrasted the March and April 2015 evaluations with Plaintiff's daily activities during the relevant time period. (R. 15.) During that time, Plaintiff lived independently and managed her own personal care, meals, driving, chores, shopping, and finances. (R. 15.) She sought no treatment from any mental health provider. (R. 15.) Plaintiff explained she did not have medical insurance during that timeframe, but the

8

frequency of appointments was the same as when she did have health insurance prior to August 2010. (R. 15.)

Based on the above evidence, the ALJ found no impairment residual to her head injury that would have caused more than a minimal limitation in her ability to do basic work activities for a continuous twelve-month period. (R. 15.) The ALJ found, at most, her sense of taste and smell affected, but that would not have affected her ability to work. (R. 15.) Particularly relevant, there were no complaints or objective findings regarding balance or vision difficulties through December 2014. (R. 15.) Plaintiff's daily activities, ability to live independently and fully care for herself and her home, and drive were not consistent with balance or visual impairments. (R. 15.) There were no further syncopal episodes and no evidence of ongoing treatment or functional limitations related to the head injury. (R. 15.)

The ALJ further found no substantial evidence of any cognitive impairments related to the head injury, noting there were no complaints of cognitive difficulties through December 2014 and no diagnosis of a cognitive disorder based on objective medical findings by an acceptable medical source. (R. 16.)

### 3. Discussion

As set forth fully below, the Court finds that the ALJ did not err in concluding that Plaintiff's head injury and residual effects would not have significantly limited her ability to do basic work activities.

### a. The Medical Evidence Does Not Establish a Severe Impairment Related to Plaintiff's Head Injury

There is no dispute that Plaintiff suffered a head injury as a result of a syncopal episode in May 2010 and initially experienced nausea, vomiting, headaches, neck pain, sweatiness, and dizziness. (R. 253–56.) As the ALJ accurately observed, however, her symptoms quickly improved, within a few months. (R. 266.) Indeed, by August 2010, Plaintiff reported no pain or other residual symptoms. (R. 266, 268.) An MRI taken at that time was essentially normal. (R. 266, 269.) Plaintiff had a history of migraines before the head injury (*see* R. 255, 352), and no medical provider attributed her migraines to the head injury.

Plaintiff told Dr. Barr in September 2011 that she had no sense of smell or taste since the head injury. (R. 382.) That evidence is found in the subjective section of the progress note, however, where providers simply record a patient's self-reported symptoms without making objective or clinical findings. (R. 382.) Thus, it cannot be considered an objective medical finding. *See* 20 C.F.R. § 404.1508. Moreover, as the ALJ observed, smelling and tasting are not basic work activities. *See* 20 C.F.R. § 404.1521(b). Dr. Barr did not identify any limitations caused by the head injury (including a reduced sense of taste or smell) that would have significantly limited Plaintiff's ability to work. Dr. Barr attributed Plaintiff's reported pain to degenerative disc disease. (R. 382, 383, 392.)

More than three years after the head injury, in November 2013, Plaintiff first reported anxiety, panic attacks, changes in her personality, and changes in her television

show and political preferences. (R. 407.) Dr. Barr did not attribute these new complaints to the head injury. Plaintiff went more than a year without another medical appointment. At an appointment a year later in December 2014, Dr. Barr attributed Plaintiff's reported low back and hip pain to sciatica and a dislocated hip (R. 415–16), not the head injury. By this time, four-and-a-half years had passed since Plaintiff's head injury, and no medical provider had attributed any complaint, symptom, or limitation to the head injury, other than the self-reported sensory losses.

"It is axiomatic that a severe impairment imposes limitations, and an impairment that imposes no limitations is not severe." *Pickens v. Berryhill*, No. 4:18-cv-212 (JLH/BD), 2019 WL 1219707, at *2 (E.D. Ark. Mar. 15, 2019), *R. & R. adopted*, 2019 WL 1449618 (E.D. Ark. Apr. 1, 2019). The ALJ properly concluded that the medical record evidence generated during the relevant timeframe did not establish that Plaintiff's head injury and residual effects had more than a minimal effect on her ability to work for at least a twelve-month period.

### b. Plaintiff's Insurance Coverage

Plaintiff did not see a doctor for more than a year after her appointment in August 2010. Plaintiff now claims she did not attend medical appointments more frequently because her insurance coverage ceased. But when Plaintiff saw Dr. Barr in September 2012, she told Dr. Barr she would not qualify for any medical assistance program because she had money in a savings account. (R. 390; *see* R. 399.) If Plaintiff had money in a savings account, that indicates she could have paid for medical appointments out of pocket, but chose not to. This undermines her argument that she stopped going to

medical appointments because her health insurance lapsed. It is more likely that that she did not need any medical treatment between her yearly appointments and that she made an appointment only when her prescriptions needed to be refilled. Furthermore, the record shows no change in the frequency of Plaintiff's appointments after her health insurance coverage ceased.

### c. Medical Evidence After the Relevant Timeframe

The timeframe in which Plaintiff had to establish a severe impairment expired on December 31, 2014. *See Ponder v. Colvin*, 770 F.3d 1190, 1191 (8th Cir. 2014) ("To obtain disability insurance benefits, [a plaintiff] must establish that she was disabled . . . not later than the date her insured status expired . . . ."). Plaintiff relies on several medical records dating after December 31, 2014, to attempt to establish she had a severe impairment related to her head injury before that date: a consultative head injury evaluation by Dr. Brionn Tonkin in March 2015, an optometric evaluation by Dr. Amy Chang in April 2015, a psychological evaluation by Dr. Jane Roskowski in April 2015, and a letter written by Dr. Barr in April 2015.

The ALJ rejected the evaluations by Dr. Tonkin and Dr. Roskowski because they were inconsistent with medical and other evidence generated during the relevant time frame and were not supported by clinical findings. (R. 14–15.) These are valid reasons to give little to no weight to medical evidence. *See* 20 C.F.R. § 404.1527(c)(3), (4). In addition, neither Dr. Tonkin nor Dr. Roskowski examined or treated Plaintiff during the relevant timeframe, and their evaluations did not address Plaintiff's functioning and limitations during that period of time, other than to recount Plaintiff's subjective, self-

reported symptoms. (*See* R. at 476–82, 505–12.) Thus, the ALJ did not err in concluding that their evaluations did not establish that Plaintiff's head injury and residual effects more than minimally affected her ability to work through the date last insured.

Similarly, Dr. Chang did not treat Plaintiff during the relevant timeframe, nor did she find that Plaintiff experienced any limitations attributable to her head injury before December 31, 2014. (R. 494–98.) Therefore, the treatment record was not germane to the relevant period. In addition, the eye examination was negative for blurred vision and double vision, despite Plaintiff's report of those symptoms. (R. 495–96.) Other symptoms and limitations claimed by Plaintiff (*i.e.*, tired eyes and sensitivity to light) were new, and thus not consistent with medical evidence generated during the relevant timeframe. Finally, Dr. Chang's conservative recommended treatment—prescription glasses and eight neurological vision rehabilitation appointments—is not consistent with a severe impairment lasting at least twelve months and causing more than a minimal limitation on ability to work. Though the ALJ did not explicitly discuss Dr. Chang's treatment record, any failure to do so was harmless error given its inapplicability to the relevant period of time and inconsistency with the medical evidence of record from that period of time.

In a letter dated April 28, 2015, Dr. Barr wrote that Plaintiff had "multiple medical problems that impact her ability to work including hypertension, a traumatic brain injury (TBI), degenerative disc disease in her lower back and neck, migraine headaches and chronic pain." (R. 444). Dr. Barr also described Plaintiff's concentration as "affected by both TBI, depression and chronic pain." (R. 444.) Dr. Barr did not describe any

13

limitations specifically attributable to the head injury, however, nor do Dr. Barr's own treatment records from the relevant timeframe support any such limitations. Dr. Barr's treatment records from the relevant timeframe also fail to support her comment that Plaintiff's concentration was impaired. Because Dr. Barr's letter did not address Plaintiff's abilities and limitations before the date last insured, was not supported by any objective medical findings, and was inconsistent with Dr. Barr's own treatment records and other medical evidence generated during the relevant timeframe, the ALJ did not err by not considering the letter at step two.[3]

In sum, the medical records generated after December 31, 2014, on which Plaintiff relies to establish a severe impairment before that date, simply do not address her functioning and limitations during the relevant time. Indeed, those records are inconsistent with the medical evidence from the relevant time period. Therefore, records post-dating December 31, 2014, do not support a finding that Plaintiff's head injury and residual effects significantly limited her ability to work before her insured status expired.

### d. Plaintiff's Severe Impairments

It is worth noting that the ALJ did not conclude that Plaintiff had no severe impairments. To the contrary, the ALJ found Plaintiff had severe impairments relating to a right hip arthroplasty and degenerative disc disease in the cervical and lumbar spine.

---

[3] Plaintiff argues that no physician reviewed and rejected Dr. Barr's and Dr. Tonkin's opinions, but cites no authority for the proposition that such medical evidence is required. In addition, "[i]t is the ALJ's responsibility to weigh conflicting evidence" *Rhinehart v. Saul*, No. 18-2746, --- F. App'x ----, 2019 WL 4233465, at *2 (8th Cir. Sept. 6, 2019), and there is no manifest error in accepting evidence generated before the date last insured over evidence generated after that date.

To the extent Plaintiff's challenge to the ALJ's step two discussion implicates limitations attributable to those impairments (*i.e.*, neck pain, chronic pain, sciatica, and back pain), there can be no dispute that the ALJ properly considered those impairments to have more than a minimal effect on Plaintiff's ability to work.

### e. The Effect of the ALJ's Step Two Findings at Step Four

Plaintiff contends that the ALJ's finding that her head injury and residual effects were not a severe impairment at step two resulted in a failure to include relevant nonexertional limitations in the ALJ's assessment of her RFC. The premise of Plaintiff's argument is flawed. The Court has determined that the ALJ properly considered Plaintiff's head injury and residual effects at step two. Substantial evidence supports the ALJ's conclusion that Plaintiff had no significant limitations caused by her head injury that met the twelve-month durational requirement and that would have more than minimally affected her ability to work. Therefore, the ALJ was under no obligation to include limitations related to her head injury in his RFC assessment.

### B. Work History

Plaintiff argues that the ALJ failed to consider her work history in evaluating the intensity, persistence, and functional limitations of her subjective symptoms. In considering a claimant's symptoms, the ALJ will consider the objective medical evidence and

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

Social Security Ruling 16-3p, 2017 WL 5180304, at *5, 7–8 (S.S.A. Oct. 25, 2017). A claimant's work history may also be relevant. *Bryant v. Colvin*, 861 F.3d 779, 782 (8th Cir. 2017). The ALJ need not explicitly discuss each factor, *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005), however, and a court should defer to the ALJ's findings when the ALJ expressly discredits the claimant and provides good reasons for doing so, *Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1990).

Here, the ALJ determined that the intensity, persistence, and limiting effects of Plaintiff's symptoms were not as severe as she claimed. (R. 17–18.) The ALJ considered and noted inconsistencies with the objective medical record. (R. 18.) He considered Plaintiff's claim that she had trouble sleeping due to pain. (R. 17.) The ALJ described functional limitations and restrictions caused by Plaintiff's pain, and he discussed her medications and a successful surgery. (R. 18–19.) The ALJ took note of Plaintiff's report that she had shoveled and done "things around the house that she should not be doing." (R. 18.)

16

Though the ALJ's evaluation of Plaintiff's subjective symptoms was not robust and it may have been preferable for the ALJ to include Plaintiff's work history in his discussion, an ALJ is not required to refer to every aspect of the record. The parts of the record to which he referred were sufficient to support his credibility determination. *See Roberson v. Astrue*, 481 F.3d 1020, 1025–26 (8th Cir. 2007). Therefore, substantial evidence supports the ALJ's consideration of Plaintiff's subjective symptoms.

Based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment [Doc. No. 14] is **DENIED**;
2. Defendant's Motion for Summary Judgment [Doc. No. 18] is **GRANTED**; and
3. This case is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated:  September 23, 2019       s/ *Hildy Bowbeer*
                                 HILDY BOWBEER
                                 United States Magistrate Judge